IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **DENISE KNAPPER,** § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:21-cv-01228-O-BP |
| § | |
| **LOCKHEED MARTIN, INC.,** § | |
| § | |
| Defendant. § | |
| § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Before the Court are Defendant Lockheed Martin Corporation's Motion to Dismiss, filed December 27, 2021; Plaintiff Denise Knapper's Response, filed January 21, 2022; and Lockheed Martin Corporation's Reply, filed January 28, 2022. ECF Nos. 7, 11, 12, respectively. After considering the pleadings and applicable legal authorities, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **GRANT in part** and **DENY in part** the Motion to Dismiss. ECF No. 7. Judge O'Connor should **GRANT** the Motion on Knapper's race discrimination claim and **DISMISS** that claim **WITHOUT PREJUDICE**. Judge O'Connor should **DENY** the Motion on Knapper's sex discrimination and retaliation claims.

I.  **BACKGROUND**

Knapper has worked for Lockheed Martin since 1995. ECF No. 1 at 7. She alleges Lockheed Martin subjected her to sex and race discrimination in various forms and pressured her to remain silent about her alleged mistreatment. *Id.* at 7-8. She allegedly "suffered through many years of humiliation, intimidation, harassment, lost wages, and lost pension." *Id.* at 9. Furthermore, Knapper says she "continue[s] to be discriminated against weekly." *Id.* Knapper took her concerns

to the Equal Employment Opportunity Commission ("EEOC") in July 2021. *Id.* at 5. After investigating her claim, the EEOC sent Knapper a right-to-sue letter on August 9, 2021. *Id.* Thereafter, Knapper filed this civil action on November 5, 2021, alleging sex discrimination, race discrimination, and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"). *Id.*

Lockheed Martin moved to dismiss Knapper's lawsuit on December 27, 2021. ECF No. 7. Its Motion argues the Court should dismiss Knapper's claims under Rule 12(b)(6) because she:

> (1) pleads no facts to support a race or color discrimination claim, or a retaliation claim, (2) the majority of things she complains about occurred (if at all) well outside [the] 300-day period before she filed her EEOC charge, (3) with one exception (*i.e.*, the alleged pension-pay differential) the things she complains about within the 300-day period are not cognizable adverse actions, and (4) she does not allege that she administratively exhausted claims related to the pension-pay differential.

*Id.* at 3. Knapper responded on January 21, 2022, clarifying her claims and explaining why the Court should consider her allegations predating the 300-day window for EEOC charges. *See* ECF No. 11. Lockheed Martin replied on January 28, arguing the Court should look only to Knapper's "live complaint" as initially filed, and should not consider her subsequent pleadings as an amendment to the complaint. *See* ECF No. 13. Lockheed Martin's Reply dropped the fourth argument from its Motion to Dismiss relating to administrative exhaustion of Knapper's pension-pay differential claim. *Id.* at 5.

## II.     LEGAL STANDARDS

### A.     Rule 12(b)(6) Standard

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To state a viable claim, Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(1). While complaints do not need detailed factual allegations to survive 12(b)(6) dismissal, "a formulaic recitation of the elements of a cause of action will not do." *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Rather, the complaint must include enough facts "to raise a right to relief above the speculative level" with the court operating "on the assumption that all the complaint's allegations are true." *Id.*

District courts "can grant a motion to dismiss only if it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim that would entitle [her] to relief." *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (citing *Leffall v. Dall. Indep. Sch. Dist.*, 28 F.3d 521, 524 (5th Cir. 1994)). When considering a Rule 12(b)(6) motion, courts must "take all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff . . . and ask whether the pleadings contain 'enough facts to state a claim to relief that is plausible on its face.'" *Yumilicious Franchise, LLC v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

As a *pro se* litigant, Knapper's "pleadings are to be construed liberally." *Sama v. Hannigan*, 669 F.3d 585, 599 (5th Cir. 2012) (citing *Perez v. United States*, 312 F.3d 191, 194-95 (5th Cir. 2002)). "'However inartfully pleaded,' a *pro se* complaint must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). This liberal construction applies to *pro se* pleadings beyond the Complaint, which the Court may construe as amendments to the original complaint. *McCreary v. Richardson*, 738 F.3d 651, 655 (5th Cir. 2013) (citation omitted). Nonetheless, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

Thus, even for *pro se* pleadings, "[t]o state a claim, a pleader must allege facts, not legal conclusions." *Hanson v. Town of Flower Mound*, 679 F.2d 497, 504 (5th Cir. 1992).

### B.   Dismissal with Prejudice Standard

Federal courts adhere to a "well-established policy that the plaintiff be given every opportunity to state a claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citation omitted). Thus, the Fifth Circuit recommends suits be dismissed without prejudice on Rule 12 motions. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *Hines v. Wainwright*, 539 F.2d 433, 434 (5th Cir. 1976). In this regard, "[i]t is recognized that the dismissal of a case with prejudice is a drastic remedy to be used only in those cases where a lesser sanction would not better serve the interests of justice." *Brown v. Thompson*, 430 F.3d 1214, 1216 (5th Cir. 1970).

### C.   Title VII Standard

Title VII prevents employers from discriminating "against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000(e); *Harvey v. Blake*, 913 F.2d 226, 227-28 (5th Cir. 1990). To show race or sex discrimination under Title VII, a plaintiff must establish she: "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside [her] protected group or was treated less favorably than other similarly situated employees outside the protected group." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). For payment discrimination, a plaintiff must show (1) she is a member of "a protected class"; (2) she "was paid less than a non-member"; and (3) her "circumstances are nearly identical to those of the better-paid non-member." *Taylor v. United Parcel Serv., Inc.*, 554

F.3d 510, 522-23 (5th Cir. 2008) (citation omitted). Finally, to assert a Title VII retaliation claim, a plaintiff must show: "(1) that [she] engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action." *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003).

### D. Administrative Exhaustion Standard

"Title VII requires employees to exhaust their administrative remedies before seeking judicial relief." *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008) (citing *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006)). "Private sector employees must satisfy [their exhaustion] requirement by filing an administrative charge with the EEOC." *McClain*, 519 F.3d at 273 (citation omitted). In Texas, a claimant must file an EEOC charge within 300 days of the challenged conduct. *Huckabay v. Moore*, 142 F.3d 233, 239 (5th Cir. 1998). Any resulting complaint must fall within the scope of the EEOC charge. *Id.* Although the lawsuit can involve "any kind of discrimination like or related to the charge's allegations," the charge must be sufficient to put the employer on notice of the plaintiff's allegations. *Pacheco*, 448 F.3d at 788. Courts liberally construe the scope of the EEOC charge because Title VII "was designed to protect the many who are unlettered and unschooled in the nuances of literary draftsmanship." *Sanchez v. Stand. Brands, Inc.*, 431 F.2d 455, 465 (5th Cir. 1970).

The continuing violation doctrine relieves plaintiffs of the duty to prove all their allegations fell within the 300-day window for their EEOC charge. *Berry v. Brd. of Supervisors of La. State Univ.*, 715 F.2d 971, 973 (5th Cir. 1983). As the Fifth Circuit explained in *Messer v. Meno*:

> The continuing violation theory relieves a plaintiff of establishing that all of the complained-of conduct occurred within the actionable period if the plaintiff can show a series of related acts, one or more of which falls within the limitations period . . . The core idea of the continuing violations theory, however, is that equitable considerations may very well require that the filing periods not begin to run until facts supportive of a Title VII charge or civil rights action are or should be apparent

5

> to a reasonably prudent person similarly situated . . . Thus, a plaintiff can avoid a limitations bar for an event that fails to fall within the statutory period where there is a persisting and continuing system of discriminatory practices . . . that may not manifest themselves as individually discriminatory except in cumulation over a period of time.

130 F.3d 130, 134-35 (5th Cir. 1997) (citations omitted) (cleaned up). Otherwise, plaintiffs who initially failed to realize a grievance was actionable and did not bring their claim until beyond the 300-day window would automatically be precluded from vindicating their rights in federal court. *See Glass v. Petro-Tex Chemical Corp.*, 757 F.2d 1554, 1561 (5th Cir. 1985).

To trigger the doctrine, plaintiffs must show the alleged misconduct is ongoing and that "it is the cumulative effect of the discriminatory practice, rather than any discrete occurrence, that gives rise to the cause of action." *Huckabay*, 142 F.3d at 239. When determining the doctrine's applicability, courts consider three factors:

> The first [factor] is subject matter. Do the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation? The second is frequency. Are the alleged acts recurring . . . or more in the nature of an isolated work assignment or employment decision? The third factor, perhaps of most importance, is degree of permanence. Does the act have the degree of permanence which should trigger an employee's awareness of and duty to assert his or her rights, or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate?

*Berry*, 715 F.2d at 981. "Importantly, however, the particular context of individual employment situations requires a fact-specific inquiry that cannot easily be reduced to a formula." *Huckabay*, 142 F.3d at 239 (citation omitted).

### III. ANALYSIS

Lockheed Martin argues certain facts from Knapper's Response "are not in [Knapper's] complaint, and therefore are not directly relevant to the issue before the Court, namely whether Knapper's live complaint satisfies Rule 8." ECF No. 13 at 1. But this argument improperly

constrains the Court's analysis, as courts may liberally construe subsequent *pro se* pleadings as amendments to the complaint. *McCreary*, 738 F.3d at 655. This policy is well established, as courts prefer not to hold *pro se* litigants to procedural strictures that penalize them "for lacking the linguistic and analytical skills of a trained lawyer." *Perez*, 312 F.3d at 194; *see also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."). Having construed Knapper's pleadings broadly here, the undersigned concludes her sex discrimination and retaliation claims survive Rule 12(b)(6) scrutiny, while her race discrimination claim does not.

### A. Knapper alleges plausible sex discrimination and retaliation claims.

Lockheed Martin argues Knapper's sex discrimination and retaliation claims should be dismissed because they are unaccompanied by sufficient supportive facts. *See* ECF No. 7. But Knapper's pleadings show otherwise. Among other things, Knapper's Complaint alleges the following facts:

- "Throughout my twenty-six-year employment at Lockheed Martin, I have experienced discrimination and harassment based on my gender and in retaliation for complaints regarding the differential treatment I received." ECF No. 1 at 7.

- "I have been denied promotions and received a lesser salary than my male counterparts. For example, when I was employed as a technician, I was informed by my manager . . . that he could not promote me because I did not have a degree. Yet, after I obtained my degree, I was again told that I was unable to be promoted. However, all the male employees that were in the group and not possessing such degree were promoted." *Id.*

- "In or around 2014, my female manager . . . lowered my raise after I went to HR. [She] claimed that no one wanted to work with me because no one liked me, and I would report any wrongdoing to HR." *Id.*

- "In 2017, I was finally promoted, albeit ten years after receiving my degree . . . [w]ith or without a degree, my male counterparts continued to receive higher salaries." *Id.* at 8.

- "Around June 2021, I learned that, due to the fact that I had lower wages for all those years, my pension is significantly less. I will receive $1300 per month, while male employees with similar years of service are receiving double or even triple that amount." *Id.*

- "Lockheed Martin Corporation created an environment where female employees had minimal roles. The female employees always had to go through the males [] and were provided a lesser salary. My male counterparts continued to receive significant salary increases, and although I continued to receive exceptional reviews, my raises were noticeably lower." *Id.*

At this stage, the Court must assume Knapper's pleadings are true and view them in the light most favorable to her cause. *Yumilicious Franchise, LLC*, 819 F.3d at 174. If the Court accepts as true the facts stated above and views them in the light most favorable to Knapper, they clearly allege plausible claims for sex discrimination and retaliation.

Knapper alleges a sex discrimination claim because her pleadings show make out the elements set out in *McCoy.* 492 F.3d at 556. For the first factor, the parties do not dispute Knapper is a member of a protected class. *See* ECF No. 1 at 7. For the second, Knapper repeatedly references her qualifications and notes her upward mobility was hindered "although [she] continued to receive

exceptional reviews." *Id.* at 8. For the third, Knapper references numerous adverse actions, including verbal harassment, promotion denials, unequal pay, and inequitable project distributions. *Id.* at 7-8. For the fourth, Knapper alleges "Lockheed Martin Corporation created an environment where female employees had minimal roles. The female employees always had to go through the males [] and were provided a lesser salary. My male counterparts continued to receive significant salary increases, and although I continued to receive exceptional reviews, my raises were noticeably lower." *Id.* at 8. Thus, Knapper alleges a plausible sex discrimination claim.

Knapper also satisfies the pleadings burden specific to her payment discrimination claims as set out in *Taylor*. 554 F.3d at 522-23. She pleads that she is in a protected class to satisfy the first factor. She satisfies the second because she details how her pay over time, as well as her $1300 pension, were significantly less than those of her male counterparts. ECF No. 1 at 7-8. She meets the third requirement because she recounts that earning her degree and receiving stellar performance reviews did nothing to equalize her pay relative to her male colleagues. *Id.* Thus, her Complaint alleges a plausible payment discrimination claim.

Knapper also alleges a plausible retaliation claim under *Ackel*. 339 F.3d at 385. While she alleges multiple instances of retaliatory conduct, two sentences from her Complaint satisfy each *Ackel* factor: "In or around 2014, my female manager . . . lowered my raise after I went to HR. [She] claimed that no one wanted to work with me because no one liked me, and I would report any wrongdoing to HR." *Id.* Those sentences alone show Knapper engaged in protected activity, was subjected to an adverse employment action, and that a causal link connected her protected activity and the adverse action. Thus, Knapper alleges a plausible retaliation claim.

### B. Knapper does not allege a plausible race discrimination claim.

Lockheed Martin argues Knapper "pleads no facts at all that, if accepted as true, would give rise to a claim of race or color discrimination." ECF No. 7 at 3. The undersigned agrees. Even liberally construed, the Complaint does not reference acts or omission attributable to Lockheed Martin that could be considered discriminatory based on Knapper's race. *See* ECF No. 1. Knapper's Response did not remedy this factual paucity. Rather, the Response contained a single sentence that passingly referenced race discrimination: "Manager Mrs. Larsen was prejudice[d] and used her authority to discriminate against African American women." ECF No. 11 at 2 (cleaned up).

While the Response clarifies that Knapper's manager gave "white males" higher raises, that issue alone cannot show race discrimination because the proper comparison would be between black women and white women. *See id.* If anything, that fact supports Knapper's separate sex discrimination claim. As for her race discrimination claim, Knapper falls short of the factual showing required to survive Rule 12(b)(6) dismissal. *See Twombly*, 550 U.S. at 555. Knapper does not allege a plausible claim by stating Lockheed Martin's management "used [] authority to discriminate against African American women" without any specific example of such behavior. *See* ECF No. 11 at 2. Even for *pro se* litigants like Knapper, "[t]o state a claim, a pleader must allege facts, not legal conclusions." *Hanson*, 679 F.2d at 504.

While Knapper does not allege a plausible race discrimination claim, the undersigned disagrees with Lockheed Martin's suggestion that her claim be dismissed with prejudice. *See* ECF No. 7 at 1, 3, 8. Because federal courts generally give plaintiffs "every opportunity to state a claim," *see Ramming*, 281 F.3d at 161, the Fifth Circuit recommends dismissal without prejudice on Rule 12 motions. *Great Plains Tr. Co.*, 313 F.3d at 329; *Hines*, 539 F.2d at 434. Exceptions to

this general rule exist "in cases where a lesser sanction would not better serve the interests of justice." *Brown*, 430 F.2d at 1216. In such cases, the "drastic remedy" of dismissal with prejudice may be warranted. *Id.* But nothing here indicates dismissal with prejudice is warranted, so Judge O'Connor should dismiss Knapper's race discrimination claim without prejudice. Moreover, because limitations may apply to prevent her reasserting those claims, Judge O'Connor should not dismiss her race discrimination claims if she amends her Complaint to state facts to support them within the fourteen-day period permitted for objections to these findings, conclusions, and recommendation or such other time period that Judge O'Connor sets.

      **C.**    **Knapper exhausted her sex discrimination and retaliation claims under the continuing violation doctrine.**

Knapper's EEOC charge and right-to-sue letter satisfy the administrative exhaustion requirement for her sex discrimination and retaliation claims. *See McClain*, 519 F.3d at 273 (citation omitted). Lockheed Martin acknowledges Knapper's payment discrimination claim falls within the proper exhaustion timeframe. ECF No. 13 at 3-5. Thus, the exhaustion question concerns Knapper's allegations of sex discrimination and retaliation more broadly. In this regard, her claims for sex discrimination and retaliation are exhausted because her allegations implicate the continuing violation doctrine. *See Berry*, 715 F.2d at 973.

To begin, the Court may liberally construe the scope of Knapper's EEOC charge to incorporate allegations unaccompanied by a specific date. *See Sanchez*, 431 F.2d at 465. Beyond that, the Fifth Circuit has long recognized "that equitable considerations may very well require that the filing periods not begin to run until facts supportive of a Title VII charge or civil rights actions are or should be apparent to a reasonably prudent person similarly situated." *Messer*, 130 F.3d at 134. Lockheed Martin argues "[t]he majority of the things Knapper complains about in her complaint are not cognizable adverse actions." ECF No. 13 at 4. Even if that were true, it is often

11

the case that "the cumulative effect of the discriminatory practice, rather than any discrete occurrence, gives rise to the cause of action." *Huckabay*, 142 F.3d at 239. While Knapper may have lacked a claim had she sued for any single occurrence, the aggregate effect of the Complaint's allegations, taken as a whole, gives rise to a plausible Title VII claim.

The Court must consider three factors when determining whether the doctrine applies. *Berry*, 715 F.2d at 981. The first is subject matter, which asks if the allegations "involve the same type of discrimination, tending to connect them in a continuing violation?" *Id.* As discussed above, Knapper alleges Lockheed Martin consistently thwarted her upward mobility because she is a female. *See* ECF No. 1 at 7-8. Thus, the first *Berry* factor favors Knapper. The second factor is frequency, which asks if the allegations are recurring "or more in the nature of an isolated work assignment or employment decision?" *Berry*, 715 F.2d at 981. Knapper alleges repeated Title VII violations over time and states that she "continue[s] to be discriminated against weekly." ECF No. 1 at 9. Thus, the second *Berry* factor also favors Knapper. The final factor is "degree of permanence," which asks if "the act ha[d] the degree of permanence which should trigger an employee's awareness of and duty to assert his or her rights?" *Berry*, 715 F.2d at 981. Here, Lockheed Martin argues many of the acts in Knapper's Complaint were so insignificant they do not represent actionable adverse actions. *See* ECF No. 13 at 4. But this favors Knapper, as a reasonable employee similarly situated may not have noticed an actionable adverse action from any one allegation—but would have when the Complaint's allegations piled up over time. *Berry*, 715 F.2d at 981. Thus, the third *Berry* factor also favors Knapper.

In concluding, Knapper's allegations are as strong as the sum of their parts, meaning no single occurrence would have alerted her to assert her rights with the EEOC but the allegations as a whole would have. *Huckabay*, 142 F.3d at 239. Thus, the continuing violation doctrine relieves

her of the unjustifiably onerous burden of proving each allegation occurred within the limitations window for her EEOC charge. Lockheed Martin acknowledges at least some of her allegations occurred within that window. *See* ECF No. 13 at 4. Thus, the doctrine allows Knapper to assert her rights here without excluding every allegation outside the limitations period. Because Knapper plausibly alleges the continuing violation of her Title VII rights, her claim should not be dismissed under Rule 12(b)(6). *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

## V.     CONCLUSION

Knapper alleges plausible sex discrimination and retaliation claims that should not be dismissed under Rule 12(b)(6). Because some of her allegations fell within the 300-day window for her EEOC charge, Knapper's claims are sufficiently exhausted under the continuing violation doctrine. For these reasons, the undersigned **RECOMMENDS** that Judge O'Connor **DENY** the Motion to Dismiss (ECF No. 7) on Knapper's sex discrimination and retaliation claims. However, Knapper does not allege a plausible race discrimination claim. Thus, Judge O'Connor should **GRANT** the Motion to Dismiss (ECF No. 7) for Knapper's race discrimination claim and **DISMISS** that claim **WITHOUT PREJUDICE**, unless Knapper amends her Complaint to state facts to support her claim of race discrimination within the fourteen-day period permitted for objections to these findings, conclusions, and recommendation or such other time period that Judge O'Connor sets.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). To be specific, an objection must identify the particular finding or recommendation to which objection is made, state the basis for

the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

**SIGNED** on February 8, 2022.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE